IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID RINGER,

                Plaintiff,                          OPINION AND ORDER

v.

                                                    20-cv-120-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                Defendant.

---

      Pursuant to 42 U.S.C. § 405(g), plaintiff David Ringer seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act from his alleged onset date of October 16, 2015, through July 17, 2018.  The ALJ issued a partially favorable decision, finding that Ringer was disabled as of July 18, 2018.  Ringer raises two core challenges in this appeal:  (1) the ALJ erred in determining the disability onset date; and (2) the ALJ failed to ensure that the vocational expert used a reliable method to calculate job numbers.  For the reasons that follow, the court agrees that the ALJ erred in determining the disability onset date and will accordingly remand the decision for rehearing.

BACKGROUND[1]

**A. Overview**

     Plaintiff David Ringer  has at least a high school education, is able to communicate in English and has past work experience as a boilermaker, which is a heavy exertion job.

---

[1] The following facts are drawn from the administrative record ("AR"), available at dkt. #13.

(AR 24.) Ringer last engaged in substantial gainful activity on October 16, 2015, the same date as his alleged onset disability date.

Ringer applied for social security disability benefits on December 18, 2015, claiming an alleged disability onset date of October 16, 2015. With a birth date of October 8, 1967, Ringer was 48 years-old on his alleged disability onset date, which is defined as "younger, person," but having turned 50 in 2017, he was "closely approaching advanced aged," at the disability onset date found by the ALJ. 20 C.F.R. § 404.1563. Ringer claimed disability based on calcaneal (or heel) fracture, arthritis in both knees and chronic back pain. (AR 70-71.)

### B. ALJ Decision

ALJ Bill Laskaris held a video hearing on October 24, 2018, at which Ringer appeared personally and by counsel. On January 23, 2019, the ALJ issued an opinion finding that Ringer was not disabled prior to July 18, 2018.

The ALJ concluded that from the alleged onset date of October 16, 2015, Ringer suffered from the following severe impairments: osteoarthritis, status post fracture of body of right calcaneus, status post right shoulder injury, degenerative disc disease and obesity. (AR 16.) In making this determination, the ALJ concluded that a number of other impairments were not severe, but none of these determinations are material to plaintiff's appeal. (AR 17-18.)

Next, the ALJ considered whether Ringer had an impairment or combination of impairments that met or medically equaled one of the listed impairments. Ringer does not challenge the ALJ's finding that he did not meet or medically equal any of the listings,

2

although it is arguably material that the ALJ specifically considered whether he met Listing 1.04 (disorders of the spine), but concluded that he did not because "though the claimant does have evidence of degenerative disc disease, there is no evidence of nerve root compression by neuro-anatomic distribution of pain, nor spinal arachnoiditis, nor stenosis resulting in pseudoclaudication." (AR 18.)

The ALJ then determined Ringer's residual functional capacity ("RFC"), but, for reasons explained below, set one RFC for the period prior to July 18, 2018, and a second RFC for the period from July 18, 2018, to the date of the hearing. For the first RFC, the ALJ determined that Ringer could perform light work with additional exertional restrictions of "can never climb ladders, ropes, or scaffolds"; "can occasionally climb ramps and stairs as well as balance, stoop, crouch, kneel, and crawn"; "can occasionally reach overhead on the right side"; and "should avoid concentrated exposure to extreme cold, wetness and humidity." (AR 18.) The ALJ also determined that Ringer "is limited to simple, routine, and repetitive tasks." (*Id.*) After July 18, 2018, the ALJ crafted the same RFC, but added that Ringer could only "sit for two hours and seven minutes in a day"; "stand for five hours and 33 minutes in a day"; and "walk for one-third of the day." (AR 22.)

In determining his RFC, the ALJ considered plaintiff's testimony that his "physical conditions cause symptoms such as widespread musculoskeletal pain, fatigue, sleep disturbances, and loss of strength," and that due to these symptoms, "he cannot walk farther than one [block] before requiring rest"; "has difficulty performing sustained postural or weight-bearing activities, such as standing, squatting, lifting, bending, reaching, walking[,] sitting kneeling, stair climbing, completing tasks, concentrating, using hands,

and getting along with others"; and "cannot adequately complete basic activities of daily living, including dressing[,] bathing, and toileting, and can no longer engage in work activities." (AR 19.)

The ALJ, however, partially discounted plaintiff's account because "[t]he medical evidence of record fails to support the extent of the claimant's back and lower extremity limitations prior to the claimant's established onset date." (AR 19.) Specifically, the ALJ pointed to: (1) evidence in the record that his right calcaneal fracture -- which occurred on the date of his alleged onset date -- was healing, while acknowledging that there may be some ongoing residual pain and (2) evidence that following back, knee and shoulder surgeries, plaintiff's treating providers "generally focused on conservative treatment measures," although the ALJ noted continued degenerative changes in MRIs and CT scans and a second spinal surgery in 2017. The ALJ also noted that "his treatment providers often observed that he had normal or only slightly diminished gait as well as range of motion, appearance, or neurologic functioning in his back and extremities prior to his established onset date." (*Id.* at 20 (citing numerous pages of the record).)

The court then turned to the opinion evidence. The ALJ gave little weight to the medical source statement authored by plaintiff's treatment provider Marcus Haemmerle, M.D., in April 2018. Haemmerle concluded that plaintiff could generally work at the light exertion level, but that he "could not stand for longer than 30 minutes, required a job that would allow shifting from sitting to standing to walking at will, and would be required to keep his legs elevated 25-50% of the workday if performing a job requiring prolonged sitting." (AR 21.) While the ALJ recognized Haemmerle's "longitudinal treatment

4

history" with Ringer, he discounted his opinion because it was "not entirely consistent with the medical evidence of record which shows that claimant routinely demonstrated normal or only slightly diminished musculoskeletal and neurological functioning through much of his period prior to his established onset date [which the ALJ determined to be July 18, 2018]." (*Id.* (citing the same record citations as above in noting that his treatment providers often observed normal or only slightly diminished gait, range of motion, appearance and neurologic functioning).)

In contrast, the ALJ gave great weight to the opinions of the state agency medical consultants who reviewed plaintiff's record in March and September 2016, and who both concluded that plaintiff could work at the light exertion level with some postural and weight-bearing limitation. The ALJ concluded that the state agency's opinion was deserving of weight because "their opinions are generally consistent with the medical evidence," again citing to the same record citations showing normal or only slightly diminished abilities. (AR 21-22.)

The ALJ then explained his basis for finding that as of July 18, 2018, plaintiff had additional restrictions with respect to sitting, walking and standing as described above. Specifically, the ALJ relied on an October 2018 physical residual functional capacity assessment completed by occupational therapist Katy Bohman, in which she limited Ringer to light work, but also found that he was "presently able to work part time for up to 7 hours and 24 minutes [] per day, while taking into account his need to alternate sitting and standing." (AR 22-23.) In addition to addressing weight restrictions, Bohman also concluded that Ringer "is able to perform sitting for up to 1 hour and 28 minutes total

5

during a work day [and] he is able to perform standing for up to 4 hours and 44 minutes total during a work day and 15 minutes at one time before requiring a change of position." (AR 23.) The ALJ further found that "[b]ased on the medical evidence of record, . . . the claimant's limitations reasonably began near the severity level described by Ms. Bohman three months prior to her evaluation of the claimant," thus, selecting July 18, 2018, as the date by which plaintiff required additional postural limitations. (*Id.*) Specifically, the ALJ explained

> Beginning on July 18, 2018, the claimant's health providers exhausted all practical treatment modalities to address the effects of his physical impairments, which included constant specialized medical monitoring, an intensive prescription medication regimen, physical therapy, steroid epidural injections, and surgery. Despite general compliance with his treatment plan to the best of his ability, the claimant's physicians continuously documented his complaints of significant pain, loss of physical functioning, and periods of unpredictable system exacerbation that increased in severity after his established onset date. Beyond the recount of his symptoms, the claimant's care providers and medical examiners in the record observed that he had tenderness in his spine to palpitation, was unable to ambulate on his toes, and had pain with Patrick's maneuver bilaterally.

(AR 23 (citations to the record omitted).)

The ALJ then considered whether plaintiff could perform any past relevant work, easily concluding that plaintiff could not perform his past job as a boilermaker, requiring heavy exertion. With the assistance of the vocational expert, the ALJ, however, concluded that for the period from his alleged disability onset date to July 18, 2018, plaintiff could perform at least three jobs: (1) packer, with 150,000 jobs in the national economy; (2) assembler, with 200,000 jobs in the national economy; and (3) sorter with 50,000 jobs in

the national economy. The ALJ also noted plaintiff's counsel's objection during the hearing to the job numbers, finding that

> the number of jobs cited by the impartial vocational exert is an *estimate* based on reliable information from various sources, some of which the undersigned takes judicial notice (20 CFR 404.1566(d)). These sources included the DOT and census reports (20 CFR 404.1566(d)). An exact number of jobs need not be provided, rather, the burden at step 5 of the sequential evaluation is to show that a significant number of jobs exists within the confines of the hypothetical.

(AR 26.) The ALJ also noted that the VE "relied upon the provided residual functional capacity, her knowledge of the field of vocational rehabilitation, and her methodology of the job availability, and her estimates were based in part upon the publications in which the Agency takes administrative notice." (AR 26.)

As of July 18, 2018, the ALJ, relying on the VE's testimony, however, concluded that there were no jobs in the national economy that plaintiff could perform, and, thus, the ALJ determined that plaintiff was disabled as of that date.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that

of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises two, core challenges to the Commissioner's final decision: (1) the ALJ erred in determining the disability onset date; and (2) the ALJ failed to ensure that the vocational expert used a reliable method to calculate job numbers. Because the court finds that the first challenge warrants remand, the court will only briefly address plaintiff's second challenge, leaving it to the ALJ on remand to further address the methodology behind job numbers if warranted.

## I. Determining Disability Onset Date

Plaintiff's first argument is that the ALJ erred in selecting the established disability date, arguing that "Ringer's pain was more severe in the year and one-half leading up to his second back surgery" on August 14, 2017, "Ringer had multiple months of recuperation from his surgery," and during this period, he was also diagnosed with chondrocalcinosis.[2] (Pl.'s Opening Br. (dkt. #16) 15.) In particular, plaintiff argued that the ALJ failed to

---

[2] Chondrocalcinosis is a "rare disease characterized by the accumulation of calcium pyrophosphate dihydrate (CPP) crystals in and around the joints. A buildup of these crystals can lead to joint pain and damage that is progressive (worsens over time). Signs and symptoms of the disease include chronic joint pain or sudden, recurrent episodes of pain, as well as stiffness or swelling of the joints." NIH, "Chondrocalcinosis 2," https://rarediseases.info.nih.gov/diseases/1292/chondrocalcinosis-2.

comply with SSR 83-20, which required the ALJ to consider three factors in determining the onset date: (1) the individual's allegations regarding the onset date; (2) work history; and (3) all medical and other relevant evidence. SSR 83-20, 1983 WL 31249, at *1 (1983); *Lichter v. Bowen*, 814 F.2d 430, 434-37 (7th Cir. 1987); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) (noting that "medical evidence is the primary element in the onset determination" (internal quotation marks and citation omitted)). As the Commissioner points out in response, however, SSR 18-01p and SSR 18-2p, replaced SSR 83-20, and was effective October 2, 2018 -- approximately three months before the ALJ issued his opinion in this case. SSR18-01p, 2018 WL 4945639, at *7 ("This means that we will use this SSR on or after its applicable date, in any case in which we make a determination or decision.").

SSR 18-01p provides that while the ALJ will consider "the date that the claimant alleged that his or her disability began" and "the date the claimant stopped performing substantial gainful activity," "[t]he date that the claimant first met the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)." SSR 18-01p, 2018 WL 4945639, *5-7. In considering the medical and other evidence, the regulation specifically provides that ALJs should consider evidence such as:

> the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statements by the claimant about new or worsening signs, symptoms and laboratory findings.

*Id.* at *6.

9

As an initial point, while SSR 18-01p may provide more clarity and detail about the factors an ALJ is to consider in determining the onset date, the substance of the regulation does not differ greatly from the prior regulation. To the contrary, both versions required the ALJ to consider the claimant's alleged onset date, date last engaged in substantial gainful activity and the medical and other evidence, with the focus on the last factor. As such, the court rejects the Commissioner's argument that the court should find waiver as to this challenge based on the plaintiff's failure to cite to the correct regulation, especially given that the new regulation was adopted shortly before the ALJ decision rendered in this case.[3]

Now turning to the merits of plaintiff's challenge, the ALJ provided two core reasons for discounting Ringer's claim for disability from October 16, 2015, to the established disability date of July 18, 2018. First, the ALJ concluded that the injury that occurred on plaintiff's alleged onset date -- a heel fracture -- had healed (no pun intended), while recognizing that there may be some residual pain. The court finds no fault in this conclusion. But, plaintiff's impairments extended beyond his heel pain, as demonstrated by the ALJ's own of findings of severe impairments. In particular, plaintiff suffered from osteoarthritis and degenerative disc disease. (AR 16.) As for these impairments, the ALJ discounted plaintiff's symptoms because plaintiff's treating providers "generally focused on conservative treatment measures," although the ALJ noted continued degenerative changes in MRIs and CT scans and a second spinal surgery in 2017, and that the ALJ also noted

---

[3] For that same reason, the court also rejects any due process challenge plaintiff attempts to raise in his reply.

that "his treatment providers often observed that he had normal or only slightly diminished gait as well as range of motion, appearance, or neurologic functioning in his back and extremities prior to his established onset date." (AR 20.)  In support of this general statement, the ALJ cited to roughly 60 pages of the medical record, in a long string cite, which he copied and cited two other times in his opinion.

The court's review of these cited pages reveal several problems with the ALJ's treatment of the medical record.  *First*, a number of the medical records pre-date plaintiff's alleged disability onset date.  For example, the ALJ cites to several records from plaintiff's surgery to address a rotator cuff tear in his right shoulder during the spring and summer of 2015, culminating in surgery in July 2015, as well as follow-up appointments to reexamine his right shoulder. (3F/12, 22, 28, 33, 43, 56, 62, 5F/5, 25/6, 10; AR 441, 451, 457 462, 478, 485, 490, 709, 1404, 1408.)  These records establish a relatively successful surgery, but do not provide support for any finding as to the limitations posed by his degenerative disc disease or osteoarthritis, especially during the relevant period of October 2015 to July 2018.[4]  *Second*, while his shoulder condition may be marginally relevant to his claim, the ALJ also cites to several records treating plaintiff for sinus infections, bronchitis and even the common cold.  (5F/13, 14, 16, 15F/7, 18F/36; AR 717, 718, 720, 876, 1131.)  There

---

[4] Oddly, the ALJ also cites to records immediately following plaintiff's heel fracture, in which treatment providers described that his is "gait limited by pain, unable to bear weight," and that his ankle was "swollen, deformed and had limited range of motion," with a sports medicine doctor even noting that his ankle was so swollen, "there is actually no ankle." (2F3, 4F/15; AR 424, 704.) These records directly *conflict* with the ALJ's general conclusion that his gait, range of motion and appearance were normal or only slightly diminished.

11

is *nothing* in these records to suggest that the treatment providers were evaluating plaintiff's impairments material to his disability claim.

*Third*, records actually dealing with plaintiff's chronic back pain and osteoarthritis during the relevant period reveal fairly consistent descriptions of significant pain, including tenderness with examination, deficits in range of motion, at least with the lumbar spine area, positive test results for Patrick's maneuver,[5] and diminished reflexes at times. Specifically, with respect to his chronic back pain, the court notes the following records cited by the ALJ:

- 16F/42-43, AR 926-27: 5/10/16 note with Dr. Joseph, describing motor range deficiencies, positive tests, and mild tenderness of lumbar spine area;

- 16F/49, AR 933: 6/27/16 note from Dr. Joseph, describing that conservative treatments did not work; scheduled him for MRI and prescribed pain medications;

- 16F/49, AR 933: 7/22/16 appointment with Dr. Joseph to review MRI showing degenerative disk disease at L5-S1; referred for epidural steroid injections; no physical examination conducted;

- 16F/63, AR 947: 9/12/16 note from Dr. Joseph describing similar physical examination as prior examinations; referred to neurosurgery;

- 16F/68, AR 950: 9/27/16 appointment with Julie Duies, P.A., in neurosurgery office; examination revealed tenderness in the lumbar spine, positive straight leg raises, positive Patrick's maneuver and diminished reflexes;

- 16F/79, AR 963: 1/19/17 appointment with neurosurgeon Dr. Andrew Beaumont, describing similar examination as that completed by Duies; reviewed June 2016 MRI showing "multilevel spondylotic degenerative joint disease" and described him as "very functionally limited because of his current symptomology;"

---

[5] "Patrick's test or FABER test is performed to evaluate pathology of the hip joint or the sacroiliac joint." Wikipedia, "Patrick's Test," https://en.wikipedia.org/wiki/Patrick%27s_test.

12

- 17F/24, AR 1054: 4/5/17 note from Dr. Beaumont describing tests conducted to measure pain, which showed "significant concordant pain rated at 9/10 in intensity and radiating into both lower extremities," consistent with "severe disk degeneration at both L4-5 and L5-S1"; and

- 18F/24, AR 1119: 7/31/17 pre-operative appointment with N.P. Schwab noting "decreased range of motion and pain" with respect to lumbar area.

The record also reveals that Ringer had surgery on August 14, 2017, and while the initial post-operative records appeared promising (17F/32, 38, 42; AR 1062, 1067, 1072), by February 2018, plaintiff was again complaining of "intermittent back and lower extremity pain," and the physical examination at that time revealed tenderness to palpation, albeit range of motion and gait were normal (17F/50, AR 1080).

As for his osteoarthritis, beginning in early 2017, the ALJ's record citations describe restricted motion and pain due to osteoarthritis, or related conditions, including a new diagnosis of chondrocalcinosis, as illustrated by the following:

- 16F/95, AR 979: 3/24/16 appointment with new primary care physician Dr. Dana Trotter, M.D., whose examination revealed "restricted cervical spine motion," "stiff hips and osteoarthritis of both knees," and "marked loss of range of motion of his lumbar spine in flexion, extension and right-left lateral rotation";

- 16F/102, AR 986: 5/9/17 Dr. Trotter's examination noted "stiffness and gelling of the cervical and lumbosacral spine";

- 16F/106, AR 990: 7/12/17 note from Dr. Trotter, describing that exam was unchanged, but also noting that during the appointment, Ringer "got up from sitting several times because he could not sit because of the pain";

- 16F/113, AR 997: 9/12/17 note from Dr. Trotter describing, tenderness with palpation of left knee; and

- 16F/139, AR 1023: 3/1/18 appointment with Akanksha Joshi, M.D., where exam noted "tenderness to palpation" in his hands, wrists, as well as bilateral shoulders, feet, ankles, knees, cervical and lower lumbar spine, some reduced range of motion in his shoulders, and flexion limited at the lumbar region.

All of this demonstrates that the ALJ's high-level statements, followed by long string cites to the medical record, is not a fair treatment of Ringer's evidence, or, at minimum, the ALJ failed to build a logical bridge between his conclusion that Ringer was not as limited as he claimed from October 2015 to July 2018. *See Stephens*, 888 F.3d at 327.

Beyond this inadequate treatment of the record, plaintiff also correctly faults the ALJ for relying on stale record reviews by the state agency medical doctors conducted in March and September 2016, before significant health events, including a second back surgery in August 2017 and markedly increased osteoarthritis symptoms, including a diagnosis of a new joint condition. The ALJ erred in failing to secure a more recent review of the record before rendering his decision. *See Moreno v. Berryhill*, 882 F.3d 722, 728-29 (7th Cir. 2018), *as amended on reh'g* (Aug. 13, 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

Finally, in selecting the specific date of July 18, 2018, the ALJ's explanation is lacking. While the court agrees that there may be insufficient evidence to find that plaintiff was disabled on his alleged onset date, the ALJ seemingly randomly selected a date three month's prior to Bohman's October 2018 evaluation or, at least, failed to explain the basis for that date. At minimum, the ALJ's finding that by July 18, 2018, he had "exhausted all practical treatment modalities" and that his treatment providers "noted tenderness to his spine to palpation, was unable to ambulate on his toes, and had pain with Patrick's maneuver bilaterally" was consistent with records dating back to early 2017, if not late 2016.

For all of these reasons, the court reverses the ALJ's partial denial and remands for further proceedings consistent with this opinion. Upon remand, the court would recommend that the ALJ obtain a new record review by a medical expert to better understand the progress of plaintiff's impairment and determine a disability onset date that is adequately rooted in the medical record.

## II. Job Numbers

Plaintiff also argues that the ALJ erred in failing to ensure that the vocational expert employed a reliable method, citing to the Seventh Circuit's relatively recent decision in *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). Having concluded that plaintiff's first challenge warrants remand, the court need not reach this issue, other than to note that the alleged error here is not the same as that at issue in *Chavez*. In *Chavez*, the Seventh Circuit faulted the ALJ for failing to explore the vocational expert's methodology for taking a jobs number that covers a broad category of jobs and estimating the number of jobs for a finer category for which the vocational expert opined that the claimant could perform. Here, plaintiff argues that the methodology used by one of the sources cited by the vocational expert, U.S. Publishing, is inadequate to justify the vocational expert's estimates. This argument appears too far afield from the concern raised in *Chavez*, but plaintiff is free to explore it further upon remand.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, partially denying plaintiff David Ringer's application for social security disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk's office is directed to enter judgment in plaintiff's favor and close this case.

Entered this 29th day of September, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge